UNITED STATES of America,
Appellee,

v.

Nickolas FROL, Appellant.

No. 75–1016.

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1975.

Decided July 11, 1975.

Jack S. Nordby, St. Paul, Minn., for appellant.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Nickolas Frol was convicted of unlawful possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), following a jury trial in the United States District Court for the District of Minnesota. In this appeal, he contends that prejudicial hearsay statements of an alleged accomplice were erroneously admitted at his trial and that the evidence presented against him was insufficient to warrant a finding of guilt.

The government's evidence may be summarized as follows: in early 1974, Agent Donald Bloch, of the Drug Enforcement Administration, was introduced to Jerome Ellison, a dealer in narcotic drugs. Shortly thereafter, Bloch began to negotiate with Ellison for the purchase of heroin. He testified that Ellison told him the seller was to be "the white dude from Brooklyn Park named Nick." A purchase was arranged for the evening of May 8, 1974, but "Nick" failed to appear with the heroin.

Another purchase was arranged for the evening of May 20, 1974. Shortly after midnight, Bloch drove to Ellison's residence in south Minneapolis, where he picked up Ellison and Willa Lind, Ellison's girlfriend. They proceeded, at Ellison's direction, to a bowling alley in north Minneapolis. "Nick" was to be inside the bowling alley.

Bloch gave Ellison $275 in marked currency to purchase heroin. Instead of entering the bowling alley, Ellison went to a white car parked in a different part of the bowling alley parking lot. When he returned, he gave Bloch a green balloon containing approximately 3.2 grams of heroin. Ellison was not searched before

or after he allegedly made the "buy."[1] None of the marked money was ever recovered.

As a result of the alleged transaction at the bowling alley, Frol was indicted for possession of heroin with intent to distribute. At trial, testimony was adduced showing that a team of narcotics agents had Frol's white automobile under surveillance on the evening of May 20, 1974. They reported that the car left Frol's house at approximately 1:10 a.m. and drove to the bowling alley where Bloch, Ellison and Lind had gone. Following a brief lapse in surveillance, a man matching Ellison's description was seen walking away from Frol's car, at which time the car left the parking lot, having been there for less than one minute. At approximately 2:00 a.m., the car returned to Frol's residence.

A member of the surveillance team testified at trial that he saw Frol's vehicle at an intersection near the bowling alley just after the "buy" is alleged to have occurred. This police officer said he recognized Frol as the driver of the car both from a photograph of Frol he had seen and from a later personal observation. Following Frol's arrest, a card with Jerome Ellison's telephone number on it was found in Frol's wallet.

Appellant Frol contends that the District Court erred in admitting hearsay statements of Ellison to a government agent not made in Frol's presence because the government failed to establish by independent evidence that Frol was a participant in a conspiracy with Ellison and that the evidence was otherwise insufficient to establish beyond a reasonable doubt that Frol ever possessed the heroin in question. For the reasons stated herein, we agree with these contentions.

I.

At trial, descriptions and tape recordings of several telephone conversations between Agent Bloch and Jerome Ellison

were admitted into evidence over Frol's hearsay objections. Included in these conversations were statements by Ellison that linked Frol to the heroin allegedly sold on the night in question. The District Court permitted the conversations to be admitted as statements made by a co-conspirator in furtherance of the unlawful association, although it did instruct the jury that the conversations should not be considered if the jury found no unlawful association. Appellant contends that this evidence was admitted erroneously because of lack of independent evidence of a concert of action between himself and Ellison.

As a general rule, statements made by a co-conspirator in furtherance of the unlawful association are not hearsay and are properly admissible against all conspirators, whether or not a conspiracy is actually charged. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974); *United States v. Buckhanon,* 505 F.2d 1079, 1084 (8th Cir. 1974); *United States v. Sanders,* 463 F.2d 1086, 1088 (8th Cir. 1972); Fed.R.Evid. 801(d)(2)(E); E. Cleary, McCormick's Handbook of the Law of Evidence § 267, at 645 (2d ed. 1972). However, "[a]s a preliminary matter, there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury." *United States v. Nixon, supra,* 94 S.Ct. at 3104 n.14. *See also United States v. Rich,* 518 F.2d 980, 984 (8th Cir., 1975). We set forth the applicable standard in *United States v. Sanders, supra,* 463 F.2d at 1088:

The requirement for admissibility of this type of testimony is satisfied by showing likelihood of illicit association between the declarant and the defendant. . . . If the issue is submitted to the jury, it is the responsibility of the jury to determine whether the evidence is credible and convincing beyond a reasonable doubt. . . . In determining preliminary questions

1. Searching Ellison would have disclosed the fact that Bloch, who was operating in an undercover capacity, was a narcotics agent. Elli-son, originally a co-defendant below, has not been tried because of mental problems and is not a party to this appeal.

of fact relating to admissibility of hearsay evidence the trial judge has wide discretion and need be satisfied only that the independent evidence is credible and sufficient to support a finding of a joint undertaking. . . . The independent evidence of illicit association may be totally circumstantial. . . . [citations omitted]

■ Here the independent evidence was insufficient to create a jury question over whether an unlawful association existed between Frol and Ellison for the purpose of distributing narcotics. It is clear that Frol and Ellison were acquaintances and perhaps friends, but that is not enough—"[g]uilt may not be inferred from mere association." *Glover v. United States,* 306 F.2d 594, 595 (10th Cir. 1962). Outside of Ellison's own reported statements, there is nothing in the record indicating that Frol and Ellison were engaged in a joint enterprise involving illicit drug traffic. The conversations were therefore inadmissible against Frol and, upon Frol's proper objection, should have been stricken from the record and the jury instructed to disregard them.

## II.

■ We next consider the sufficiency of the evidence to convict Frol in the absence of Ellison's statements. An appellate court reviewing the record in a criminal case where there has been a jury verdict against the accused must view the evidence in the light most favorable to the verdict rendered and must accept as established all reasonable inferences from the evidence that tend to support the action of the jury. *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 878, 95 S.Ct. 96, 142, 42 L.Ed.2d 85, 118 (1974). Nevertheless, we conclude that the evidence presented by the government in this case below was insufficient to sustain the jury's verdict.

■ The jury could only speculate as to who might have been in Frol's car when it appeared at the bowling alley on the night in question.[2] Moreover, even if the jury could properly infer from the evidence that Frol was in the car, the government has presented no direct or circumstantial evidence from which the jury could find beyond reasonable doubt that Frol was in actual or constructive possession of the heroin or had passed it to Ellison.[3] No transaction was observed, Ellison was not searched before or after the transaction and the government's marked money was never recovered.

As recently stated by the Fifth Circuit:

If the evidence is such that a reasonable person *may* have a reasonable doubt as to the defendant's guilt, the case should be submitted to the jury. On the other hand, a trial judge should not permit a case to go to the jury if the evidence is so scant as to allow the jury merely to speculate or to conjecture as to the defendant's guilt. In other words, a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a *reasonably* minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged.

*United States v. Stephenson,* 474 F.2d 1353, 1355 (5th Cir. 1973); *accord, Unit-*

---

**2.** A member of the team of detectives surveying Frol's automobile stated that he saw Frol driving the automobile seen at the bowling alley about ten minutes after the transaction is alleged to have occurred. This identification is tenuous at best—it was made as a result of an instantaneous observation late at night as the officer's car passed Frol's at an intersection. Moreover, the automobile was not under constant surveillance from the time it left the bowling alley until the identification occurred.

**3.** No claim of "constructive possession" is made by the government, nor would the evidence support such claim. The government's position was that Frol delivered the heroin to Ellison at the bowling alley parking lot. Even if, contrary to our holding, the evidence of Ellison's telephone conversations were properly admissible, the government failed to close the gap in its case by evidence sufficient to show that Frol was ever in actual possession of the heroin.

**1138**

ed States v. Epperson, 485 F.2d 514 (9th Cir. 1973); United States v. Suarez, 487 F.2d 236 (5th Cir. 1973), cert. denied, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974).

Upon a careful reading of the record, we are convinced that the evidence was insufficient to support a jury belief of guilt beyond reasonable doubt. We therefore vacate the judgment of conviction and remand the case to the District Court with instructions to enter a judgment of acquittal.