UNITED STATES of America, Appellee,

v.

John Gregory LAMBROS, Appellant.

No. 77–1273.

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 30, 1977.

Decided Oct. 27, 1977.

Peter J. Thompson, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U.S. Atty., Minneapolis, Minn. (argued), Thorwald H. Anderson, Jr., on brief, for appellee.

Before BRIGHT, ROSS, and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

John Gregory Lambros appeals his convictions on two counts of intentionally distributing heroin and one count of conspiracy to distribute heroin,[1] claiming insufficiency of evidence, procedural and evidentiary errors at trial, inconsistent verdicts, disregard of a prior plea bargain, and unlawful delay between arrest and indictment. We reject these challenges and affirm.

The grand jury indicted Lambros on September 14, 1976, for five counts of intentionally distributing heroin and one count of conspiracy to distribute heroin. On February 15, 1977, a jury found him guilty on two of the distribution counts and the conspiracy count.

The evidence established that on May 24, 1976, Drug Enforcement Administration Agent Michael Campion met Mr. Lambros' codefendant, Myles Standish, at the home of government informant Robert Adams. At that meeting, Standish offered to procure heroin for agent Campion, describing his source as his main source, a long-time friend, and someone who recently had a shoot-out with the police and was going to jail soon. They arranged a sale for early evening at a Red Barn restaurant in St. Paul. Earlier the same day, informant Adams overheard a telephone conversation in which Standish asked a woman named Chrissy to have her husband contact Standish.

Twice prior to the sale on May 24, surveillance agents observed Standish visit Lambros' residence at 1759 Van Buren in St. Paul. After the second visit, Standish drove directly to the Red Barn and sold an ounce of heroin to agent Campion. During the transaction, Standish indicated that the heroin had been "fronted" to him, meaning that he had yet to pay his source. Immediately after the transaction, Standish drove directly to Lambros' house, stopping momentarily at a dairy store. He stayed at the Lambros house for ten minutes and then left. Shortly afterwards, Lambros departed from the house and visited a retail shop at 1956 University.

On June 4, 1976, agent Campion and the informant met with Standish and arranged a future sale of heroin. During their negotiations, Standish again indicated that his source was about to go to jail, and for the first time referred to his source as "John."

Two sales of heroin, one of two ounces and the other of thirty-five grams, were consummated on June 7, 1976. Prior to these sales, agent Campion and Standish had agreed that two separate sales of two ounces would take place. Standish said that after the first sale, he would return to his source for the additional two ounces.

At 6:00 p. m. that evening agent Campion arrived at Standish's house and purchased the first two ounces of heroin for $5,000. While they met, Standish told Campion that the heroin came from the same source as the last ounce and that he would return to that source for the next two ounces. Later on the same evening, Standish visited informant Robert Adams and referred to the source of the two ounces sold at 6:00 p. m. as "John."

At 7:40 p. m. on that evening, agent Campion called Standish to arrange the second heroin purchase. Standish reported that his source had been tied up at dinner at his parents' house, but would be back around 8:00 p. m., and that Campion should call back. Appellant Lambros in fact returned to his house sometime during this period. At 8:00 p. m., Standish visited him, left shortly afterwards, and went directly home. At 9:00 p. m., agent Campion purchased two ounces of heroin for $4,000 from Stand-

1. Judge Donald Alsop, who presided over the case, sentenced the defendant to fifteen years' imprisonment, to run consecutive to a ten-year sentence imposed on previous charges.

ish at Standish's home. Immediately after the sale, Standish left his residence and visited the appellant Lambros.

During June 15–17, 1976, agent Campion tape recorded several telephone conversations with Standish concerning a sale on June 17. In these conversations, Standish made several references to his source, describing him as someone about to go to jail for conspiracy to import and distribute and for assaulting federal officers during a shoot-out. He stated that his source would be sentenced next Monday (June 21, 1976) and then immediately go to jail.

On June 17, 1976, the final two sales took place. Again, the parties agreed to two separate sales that day, the first scheduled at noon at Standish's residence. At 10:50 a. m., Standish and appellant met at the shop at 1956 University, St. Paul. Standish stayed only five minutes, left and drove directly home. At 12:20 p. m., he sold two ounces of heroin to agent Campion for $4,400 in recorded government funds. Standish told Campion that he would contact his supplier for four and one-half more ounces and return at 1:30 p. m.

Standish left his residence and met appellant Lambros in the parking lot of the Red Barn restaurant at 1:20 p. m. A woman named Sandra Rangel accompanied the appellant. After conversing briefly, the parties drove to a place several blocks away and parked their cars. Appellant exited from his car, entered Standish's car briefly, and then returned to his own car.

Standish departed and began driving home. En route, police stopped and arrested him, finding in his possession an ounce of thirty percent heroin and $130 of the $4,400 of marked government "buy money." Meanwhile, Lambros and Rangel had driven to the Sears store near the Minnesota state capitol. As he and his companion came out of the Sears store, police officers arrested both of them. In Ms. Rangel's purse, the officers found a makeup kit identified as belonging to appellant's wife, Christina, and $4,260 of the government "buy money." A subsequent search of Lambros' automobile by law enforcement officers uncovered a pound of mannitol, commonly used for cutting the concentration of heroin.

At trial, the Government introduced evidence showing that appellant had been sentenced and committed on June 21, 1976, for conspiracy to import and distribute a controlled substance, and for assaulting federal officers in a shoot-out. The court overruled a defense motion to exclude the evidence but gave a cautionary instruction to the jury to consider the evidence only on the issue of identity. The court also allowed a cellmate of Lambros to testify that Lambros admitted being the source of heroin for Myles Standish.

Based on this evidence, the jury convicted the appellant of conspiracy to distribute heroin and two counts of actual distribution for the sales that took place on June 17, 1976. It acquitted Lambros on distribution charges for the sale on May 24, 1976, and the two sales on June 7, 1976.

We now turn to each of the claims raised by appellant in this appeal.

I. *Sufficiency of the Evidence.*

■ At the outset, appellant argues that only circumstantial evidence supports the conviction, and that the Government failed to provide the substantial evidence necessary to prove its case beyond a reasonable doubt.

This contention must be assessed in light of the applicable standards of law: " 'The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.' " *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974), *quoting Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed.2d 527 (1942).

■ This standard also applies in cases where the conviction rests solely on circumstantial evidence, for circumstantial evidence can prove guilt equally well as direct evidence. *United States v. Carlson,* 547 F.2d 1346, 1360 (8th Cir. 1976); *accord, Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Joyner,* 539 F.2d 1162, 1165 (8th Cir. 1976).

In this case, the testimony disclosed repeated trips by codefendant Standish to Lambros' home, sales of heroin by Standish shortly afterwards, and then his immediate return to Lambros' residence. The Government also produced, via testimony and tape recordings, a convincing identification by Standish of appellant Lambros as his source. This, coupled with appellant's own admission of complicity to his cellmate, arrest with marked money in his possession and control, and obvious pattern of commerce with codefendant Standish, constitutes ample evidence to support each count of the conviction.

## II. *Alleged Trial and Evidentiary Errors.*

As a second ground for reversal, Lambros contends that the trial judge committed seven errors during appellant's trial.[2] He then argues that these errors produced confusion on the part of the jury and led to inconsistent and compromised verdicts of acquittals on counts I, II, and III, and convictions on counts IV, V, and VII.[3]

We have reviewed each of these alleged errors carefully and conclude that in each instance the trial court committed no error or, if error existed, that error produced no harm.

The jury verdicts themselves support this conclusion. Instead of evincing inconsistency, the acquittal on some counts reflected the ability of the jury to comprehend cautionary instructions given with reference to certain evidence and to convict only where untainted evidence established guilt beyond a reasonable doubt. Thus, it convicted appellant of distribution for the two transactions that took place on June 17, 1976, transactions for which the Government produced better and more direct evidence linking appellant with the sales made by Standish.

We do believe, however, that two of the errors alleged by appellant deserve more extended analysis and we discuss them separately.

### A. *Hearsay Declarations of Coconspirator Standish.*

As one error, appellant contends that the trial court should not have permitted agent Campion to testify as to conversations made by codefendant Standish that tended to implicate appellant Lambros in the distribution scheme. The trial court admitted the testimony on the theory that, although hearsay, it related statements by a coconspirator made in furtherance of the conspiracy and thus is admissible under Federal Rule of Evidence 801(d)(2)(E).

■ Appellant disputes this ruling, suggesting that the requisite "independent proof" of the conspiracy did not exist and therefore that admission of the statements was wrong. The rule for admissibility of such evidence requires that the Government prove the existence of the conspiracy by evidence that is independent of the ques-

---

**2.** Appellant alleged the following as trial errors:

A. Admission of hearsay statements of investigating officers relating to the source of heroin prejudiced Lambros and precluded him from having a fair trial.

B. Testimony of prosecution witnesses which was stricken from the record on numerous occasions contributed to the confusion of the jury and resulted in the denial of a fair trial to Lambros.

C. Hearsay statements of alleged coconspirator Standish were improperly admitted without independent proof of the existence of the conspiracy.

D. The trial court erred in admitting into evidence Lambros' admissions made while incarcerated and further erred in refusing to give a cautionary instruction regarding the same.

E. Defense counsel had insufficient time to investigate an alleged post arrest admission made by Lambros where defense counsel was not advised thereof by the prosecution until the middle of trial.

F. Reference by the prosecution in its opening statement to physical evidence which was excluded by the trial court was prejudicial and therefore requires reversal.

G. The jury was unable to fairly and intelligently evaluate the evidence and as a result entered convictions on counts IV, V and VII where the facts for conviction on counts I, II and III were at least as strong or stronger.

**3.** Count VI related only to codefendant Standish.

tioned statement. *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Frol*, 518 F.2d 1134, 1136 (8th Cir. 1975); *United States v. Rich*, 518 F.2d 980, 984 (8th Cir. 1975). The independent evidence must establish that (1) a conspiracy existed, (2) the declarant and the defendant were members of the conspiracy, and (3) the statements were made during and in furtherance of the conspiracy. *United States v. Rich, supra*, 518 F.2d at 984. In *United States v. Scholle*, 553 F.2d 1109 (8th Cir. 1977), we discussed the necessary quantum of such independent evidence.[4]

> [T]he standard for the admissibility of co-conspirator statements requires the showing of a likelihood of illicit association between the declarant and the defendant. The trial judge determining admissibility preliminarily has wide discretion and must be satisfied only that there is independent evidence, credible and sufficient to support a finding of a joint undertaking. The independent evidence of illicit association may be completely circumstantial, or may consist of the conspirators' own conduct and admissions. [*Id.* at 1117.]

■ The trial court has discretion over the order of proof of the conspiracy. We stated in *United States v. Jackson*, 549 F.2d 517, 533 (8th Cir. 1977) that:

> There is no requirement that the independent evidence of conspiracy be introduced prior to the introduction of the co-conspirator's statement. The order of proof is a matter left to the discretion of the trial court. Accordingly, the co-conspirator's statement may be conditionally admitted subject to being "connected up" subsequently by independent proof of

conspiracy, which may be totally circumstantial. [Citations omitted.]

■ In this case, ample independent evidence of the conspiracy and appellant's connection with the conspiracy existed. The series of meetings between appellant and codefendant Standish before and after each heroin sale, appellant's arrest with marked money in his possession, and appellant's admission of complicity to his cellmate all conclusively establish the existence of the conspiracy and appellant's connection with it.

The third requirement, that the statements were made during and in furtherance of the conspiracy, is also satisfied on this record. This court has repeatedly held that statements of a coconspirator identifying a fellow coconspirator as his source of narcotics are statements made in furtherance of the conspiracy. *United States v. Carlson, supra*, 547 F.2d at 1362; *United States v. Hutchinson*, 488 F.2d 484, 491 & n. 16 (8th Cir. 1973), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974).

B. *Appellant's Admission While Incarcerated.*

James Hendrickson, appellant's cellmate in the Dakota County Jail, testified that while he and Lambros were incarcerated Lambros made the following statement:

> Well, he mentioned that if I had bought-en some heroin from Joe Standish it would have probably have been his.

At trial, defense counsel objected to the admission of this statement and was overruled. Later, counsel requested the judge to submit the following instruction, adapted from E. Devitt and C. Blackmar, *Federal Jury Practice & Instructions* § 15.06 (3d ed. 1977), which the trial judge refused:

---

4. We note that the First Circuit has recently adopted an apparently more stringent test of admissibility than the prima facie test employed in this circuit. In *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977), that court stated that the trial court may admit the statements of a coconspirator against a defendant only "if it is more likely than not that the

declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy * * *."

We do not, in this case, address the First Circuit's view, but note that the evidence in this case appears to satisfy even that more stringent test.

Evidence relating to any statement, claimed to have been made by the defendant outside of court, and after the defendant is incarcerated, should always be considered with caution and weighed with great care; and all such evidence should be disregarded entirely, unless the evidence in the case convinces the jury beyond a reasonable doubt that:

The defendant made the statement; and that the statement was made knowingly, voluntarily and intentionally.

Appellant now argues that both of the above rulings by the trial judge constituted error because (1) the statement should not have been admitted because of the absence of adequate corroboration and (2) that 18 U.S.C. § 3501(a) (1970), reproduced below,[5] required the reading of the requested instruction.

■ We find no merit in appellant's contention that the statement should not have been admitted. Substantial independent evidence corroborated it, including the surveillance accounts of Lambros' transactions with Standish and his arrest with mannitol and the marked money in his possession.

■ Similarly, appellant was not entitled to the instruction that he requested. Section 3501(d) of Title 18 provides that:

(d) Nothing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention.

Appellant volunteered the information to his cellmate. Informal statements of this kind, although incriminating in effect, by terms of § 3501(d) do not trigger the procedures mandated by § 3501(a).

### III. *Appellant's Prior Convictions.*

■ Over the objections of defense counsel, the district judge admitted into evidence testimony and the taped recordings of Standish reciting information regarding Lambros' then contemporaneous convictions for assaulting federal officers and conspiring to import and distribute narcotics. The court permitted the prosecution to introduce these statements into evidence as well as other evidence of Lambros' past crimes as bearing on identity. *See* Fed.R.Evid. 404(b). At the same time, the court instructed the jury that the evidence was to be received only for the purpose of identity.

We find no error in the district court's action. Because much of the Government's evidence was circumstantial, identity became a key issue in the case. Indeed, appellant admits in its brief that identity was at issue but argues that the evidence was cumulative and that its prejudicial effect outweighed its probative worth. We disagree. Appellant's own argument in part I of its brief on the insufficiency of the evidence on identity undercuts his argument here that the evidence was merely cumulative. We cannot say, under these circumstances, that the prejudicial effect of the evidence outweighed its probative worth. Moreover, the district court properly acted to minimize the prejudicial effect with cautionary instructions.

### IV. *Prior Plea Bargain and Indictment Delay.*

Appellant makes two other contentions in this appeal. First, he claims that a prior

---

5. (a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances. [18 U.S.C. § 3501(a) (1970).]

plea bargain, entered with respect to the charges of conspiracy to import and distribute and assaulting a federal officer, barred this prosecution. We have already reviewed and rejected this same argument in a prior appeal by appellant. There we concluded that the district judge had not abused his discretion in denying appellant's motion to withdraw his guilty plea. *United States v. Lambros*, 544 F.2d 962 (8th Cir. 1976). We see no reason to alter that determination. Nothing in the record indicates that the Government possessed knowledge about crimes appellant planned to commit *after* the plea bargain of April 22, 1976.

 Finally, appellant argues that, because he was not indicted until seventy-six days after his arrest, provisions in the Speedy Trial Act, 18 U.S.C. § 3161–74 (Supp.1975), which Minnesota federal district judges have incorporated into their own plan for prompt disposition of criminal cases, require dismissal of the charges against appellant. This contention lacks any merit. The plan incorporated time limits specified in the statute in advance of the effective dates set forth in that statute. But in doing so, the Minnesota judges expressly provided that "failure to comply with the time limits prescribed herein shall not require dismissal of the prosecution." *Plan for Prompt Disposition of Criminal Cases of the District of Minnesota* § III(1)(d) (1976).

Finding no prejudicial error, we affirm the conviction of appellant on all three counts.