UNITED STATES of America, Appellee,

v.

Carmell MACKLIN, Appellant.

No. 77–1540.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1978.

Decided April 20, 1978.

Rehearing and Rehearing En Banc Denied May 10, 1978.

---

Murry A. Marks, Clayton, Mo., for appellant.

David M. Rosen, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short, former U. S. Atty., St. Louis, Mo., on brief.

Before MATTHES, Senior Circuit Judge, LAY, Circuit Judge, and HANSON,* Senior District Judge.

* William C. Hanson, Senior District Judge, Southern District of Iowa, sitting by designation.

LAY, Circuit Judge.

Carmell Macklin appeals from his conviction on three counts charging distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 846. The district court sentenced the defendant to concurrent terms of ten years imprisonment on each count to be followed by a special parole term of three years. On appeal the defendant asserts that the trial court failed to properly rule on the admissibility of certain out-of-court statements by an alleged coconspirator and that the statements were erroneously admitted because there was insufficient independent evidence to establish the existence of a conspiracy.[1] We affirm the conviction.

The government's evidence included the testimony of several law enforcement officials who investigated the activities of the defendant and his alleged coconspirators, Garry and Carol Davidson. Over objection, the trial court allowed an undercover agent to testify as to two statements made by Carol Davidson during drug transactions which indicated that her supplier for heroin was a man named "Carmell."

The defendant first asserts that the trial court erred in admitting these statements as declarations by an alleged coconspirator because the court made no explicit finding on the record that a conspiracy had been established.

It is clear that out-of-court declarations by a conspirator made during the course of and in furtherance of the conspiracy are admissible against other members of the conspiracy as well as the declarant. *See United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974);

*United States v. Overshon,* 494 F.2d 894, 898 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974); *United States v. Sanders,* 463 F.2d 1086, 1088 (8th Cir. 1972); Fed.R.Evid. 801(d)(2)(E). Under the Federal Rules of Evidence the preliminary determination of the admissibility of an alleged coconspirator's statement is now to be determined by the trial judge rather than the jury. Fed.R.Evid. 104(a). *See United States v. Bell,* 573 F.2d 1040 at 1043 (8th Cir. 1978); *United States v. Scholle,* 553 F.2d 1109, 1117 (8th Cir. 1977). Admissibility of such statements depends on the trial court's determination of whether there is sufficient independent evidence to establish the existence of a conspiracy.[2] *United States v. Nixon, supra,* 418 U.S. at 701, 94 S.Ct. 3090; *Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Lambros,* 564 F.2d 26, 29–30 (8th Cir. 1977); *United States v. Scholle, supra* at 1117. As we recently held, the standard of proof to be applied by the trial judge in making this determination is one of "preponderance of the evidence." The statement is admissible if the trial court is satisfied that independent evidence exists showing that it is more likely than not that a conspiracy existed. *See United States v. Bell, supra,* 573 F.2d at 1044.

In the present case, the defendant contends that the trial court erred in failing to make an explicit finding on the record that evidence as to the existence of a conspiracy was sufficient to render the statements admissible. Prior cases decided by this court have not required a trial judge to make such a finding on the record. *See United States v. Kelley,* 526 F.2d 615, 619 n. 3 (8th Cir. 1975), *cert. denied,* 424 U.S. 971,

---

1. Although the defendant does not specifically challenge his conviction on the three substantive distribution counts, we deem his allegations in regard to the sufficiency of the evidence of conspiracy as applicable to the substantive counts as well.

2. We are aware that the First Circuit has recently suggested by way of dictum that under Federal Rule of Evidence 104 the out-of-court statement itself may be considered by the trial

judge in determining its admissibility. *See United States v. Martorano,* 557 F.2d 1, 11–12 (1st Cir. 1977), *cert. denied,* — U.S. —, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978). We feel that this "bootstrapping" procedure is unwarranted and was not contemplated in the enactment of Rule 104; we thus adhere to our prior decisions requiring *independent* evidence of a conspiracy. *See United States v. Bell,* No. 77–1894, 573 F.2d 1040 (8th Cir. 1978).

96 S.Ct. 1471, 47 L.Ed.2d 739 (1976). Our holding in *United States v. Bell, supra,* prospectively imposes such a requirement for all trials commencing after the date of that opinion. *Cf. United States v. Petrozziello,* 548 F.2d 20, 23 (1st Cir. 1977). The absence of a specific ruling as to the sufficiency of the evidence that a conspiracy existed does not require reversal here. Prior to trial, the defendant moved *in limine* to exclude the statements by Carol Davidson. The trial judge deferred his ruling until he had heard the evidence. When the evidence as to the coconspirator's statement was offered defense counsel objected and the court overruled the objection.[3] We deem this procedure sufficient under the rules applicable at the time of trial.

We turn now to the crucial issue on this appeal: whether there was sufficient independent evidence of a conspiracy to allow the admission of Carol Davidson's out-of-court statements. We hold that there was.

The government's evidence showed that on several occasions in March of 1977 an undercover agent, Detective Crews, attempted to purchase heroin from the Davidsons at their residence at 7730 Stanford in St. Louis, Missouri. Detective Crews had previously purchased three capsules containing heroin from Garry Davidson on February 25, 1977. On March 2, 1977, at 8:10 P.M. Crews went to the Davidson residence, where he was met by Garry Davidson and his wife Carol. Garry told him that since the individual supplying the drugs did not want to see Crews or have anything to do with him, he would have to go to a bedroom toward the back of the house when the supplier arrived. At 8:15 Crews was told by Carol Davidson to go to the

back bedroom. He then heard a knock on the door. Before going to the bedroom, Crews gave Garry $100.00 which Garry counted and gave to Carol. Shortly thereafter Carol came to the back bedroom carrying a cellophane packet containing a brown powdered substance which later proved to be heroin.

Detective Crews attempted to make a buy on March 3, 1977, but was told by the Davidsons "they couldn't get ahold of their man." On March 4, 1977, and again on March 10, 1977, Crews met the Davidsons at their residence. On both occasions, he waited in the living room with Garry and Carol until the arrival of the supplier; he then was asked to wait in the back bedroom. In each instance Crews heard a knock on the door as he went to the back room, and shortly thereafter Carol returned with a packet of heroin.

On each of the occasions when Crews made a buy, defendant Macklin was observed entering the Davidsons' house at approximately the time that the drug transaction was taking place. In each instance, the testimony of officers conducting surveillance outside the Davidson residence as to the time of Macklin's arrival corresponded with Crews' testimony as to the time he heard a knock at the door and was sent to the back bedroom.[4]

Crews testified that at 6:30 P.M. on March 29, 1977, he went to the Davidson residence to purchase heroin. He and Carol Davidson talked for more than an hour while waiting for the drug supplier to arrive. During that conversation Carol told Crews that she was pregnant and planned to name her baby after "her man." She then identified her man as "Carmell." At

---

3. The new rule requiring a specific determination of the existence of a conspiracy by the court on the record does not alter the traditional discretion of the trial judge to allow the government to place the statement into evidence on the condition that it be later shown by sufficient independent evidence that a conspiracy existed. *See United States v. Jackson,* 549 F.2d 517, 533 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). It is preferable whenever possible that the government's independent proof of the conspiracy be

introduced first, thereby avoiding the danger, recognized in *Petrozziello,* of injecting the record with inadmissible hearsay in anticipation of proof of a conspiracy which never materializes.

4. The only discrepancy in this routine occurred on March 10, 1977. Crews testified that on that date the sale occurred at 7:15 P.M. but an officer conducting surveillance outside the Davidson residence testified that he observed Macklin's arrival at 8:30 P.M.

about 8:00 P.M. Carol told Crews to go to the back room because "the man" had arrived. Crews heard no knock at the door and the officers conducting surveillance outside observed no one approaching the Davidson residence at that time. Although Carol came to the back room and gave Crews a packet which allegedly contained heroin, later tests showed that the substance in the packet was not heroin.

At 10:15 P.M. on March 31, 1977, Crews again went to the Davidson residence to buy heroin. At about 10:40 P.M. Carol Davidson made a telephone call, asking the party she called where he was and when he planned to leave. During the telephone conversation Carol paused and told Crews, "Carmell's on his way." At about 11:00 P.M. Crews was told to go to the back room with Garry Davidson, and as he left the living room he heard a knock at the door. Some minutes later Carol brought a packet to the back room which subsequently proved to contain heroin. Officers observing the Davidson residence saw a man fitting Macklin's description enter the house and leave a short time later, at times corresponding to Crews' testimony.

■ The facts presented in this case are highly similar to those presented in *United States v. Carlson,* 547 F.2d 1346 (8th Cir.), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). There we held that repeated meetings between the defendant and the individual actually making sales to police officers, at times corresponding to the times of the sales, was sufficient evidence of the existence of a conspiracy to allow the admission of out-of-court declarations by alleged coconspirators, including a statement identifying the source as "Pat." As we stated in *United States v. Lambros, supra* at 30, once a conspiracy has been established by independent proof, statements identifying a coconspirator as the source of drugs are clearly made in furtherance of the conspiracy and are therefore admissible under Federal Rule of Evidence 801(d)(2)(E).

■ A significant factor in the present case is that on all but one occasion when heroin was actually sold to Crews, the defendant, or a man fitting his description, was known to have gone to the Davidson residence at times corresponding to the times of sale. In each instance, no transaction could apparently be completed until "the man" arrived. However, on March 29, 1977, the defendant did not go to the Davidsons', and no heroin was delivered to Crews. Inability to complete a drug transaction absent an individual's participation may be considered as evidence that the necessary individual was a member of a conspiracy. *See United States v. Collins,* 552 F.2d 243, 247 (8th Cir), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *United States v. Hassell,* 547 F.2d 1048, 1052 (8th Cir.), *cert. denied,* 430 U.S. 919, 97 S.Ct. 1338, 51 L.Ed.2d 599 (1977).

The defendant argues that under our holding in *United States v. Frol,* 518 F.2d 1134 (8th Cir. 1975), the evidence in this case should be considered insufficient. However, the same distinguishing features exist here that were present in *United States v. Carlson, supra.* In that case the court stated:

*Frol* is factually distinguishable from the present case. In *Frol,* a prosecution for possessing heroin with intent to deliver, the defendant was identified as a source of heroin and was allegedly the driver of an automobile from which a supply of heroin was secured. Because of inadequate surveillance, the court stated that the jury could only speculate that the defendant was in that particular automobile, 518 F.2d at 1137, and there was no independent evidence showing that the defendant was engaged in a joint venture to distribute heroin. In this case, the jury was apprised of not one, but three, transactions from which it could have concluded that Carlson was involved in the distribution of cocaine. There was no breakdown in surveillance similar to that in *Frol* since Carlson was identified and evidence of his activities was placed before the jury. The circumstantial evidence showing Carlson's participation in

the conspiracy is stronger than that in *Frol.*

547 F.2d at 1361 (citations omitted).

We find that there was sufficient independent evidence to warrant the admission of Carol Davidson's statements implicating "Carmell" in the drug transactions under Rule 801(d)(2)(E). Furthermore, the evidence, including those statements, taken in the light most favorable to the government, supports the jury's verdict of guilty on the conspiracy and distribution charges. *See United States v. Carlson, supra* at 1361. *See also United States v. Collins, supra* at 247; *United States v. Hassell, supra* at 1052.

The judgment of conviction is affirmed.