UNITED STATES of America,
Appellant,

v.

Leola HARSHAW a/k/a "Squeaky",
Appellee.

No. 82–2071.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1983.

Decided April 21, 1983.

As Amended April 26, 1983.

---

Thomas E. Dittmeier, U.S. Atty., Charles A. Shaw, Asst. U.S. Atty., St. Louis, Mo., for appellant.

Robert A. Hampe, St. Louis, Mo., for appellee.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

The United States appeals from an order entered in the District Court for the Eastern District of Missouri[1] granting defendant Leola Harshaw's motion for a mistrial. The mistrial was declared at the close of all the evidence in accordance with the procedures outlined in *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978). The district court ruled that the government failed to establish the existence of a conspiracy between Harshaw and Osborne "Tuffy" Thomas, thereby rendering Tuffy's hearsay statements inadmissible. However, because Tuffy's hearsay statements pervaded the government's case, the district court concluded that a cautionary instruction could not realistically withdraw the hearsay testimony from the jury's consideration. The court, therefore, declared a mistrial. We affirm the district court's order for the reasons discussed below.

I. *Jurisdiction*

Before we may reach the merits of this appeal, the issue of our appellate jurisdiction must be addressed. The government invokes 18 U.S.C. § 3731 (1976) as the source of this court's jurisdiction to hear its appeal. Section 3731 provides:

> In a criminal case an appeal by the United States shall be to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, *except no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.*

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

An appeal by the United States shall lie to a court of appeals from a decision or order of the district courts suppressing or excluding evidence . . . *not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information.* . . .

(emphasis added).

Traditionally, jeopardy was said to attach as soon as the jury is empaneled and sworn. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977). In this case, the district court's decision excluding Tuffy's hearsay statements was made well after the jury was empaneled and sworn, but before the judge or the jury made a determination of guilt or innocence. We must decide, therefore, whether the clause "not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment" prohibits us from entertaining the government's appeal.

The language of § 3731 cannot be construed in a vacuum. Due consideration must be given to the evil that the statute was meant to address as well as the purpose Congress intended the language of the statute to serve. The legislative history of the 1971 amendments to the Criminal Appeals Act, Pub.L. No. 91–644, Tit. III § 14(a), 84 Stat. 1890 (1971) (the Act), reveals that Congress wanted to eliminate the Act's "confusing common law language [that] arbitrarily restricts the Government's right to appeal in a number of common situations." 116 Cong.Rec. 35,659 (1970) (statement of Sen. Hruska). One such common situation was the denial of an appeal from a ruling "made after the swearing of the jury or an equivalent stage in a non-jury trial, thus leaving the Government at the mercy of a judge or defendant who waits until a later stage of the trial before making or deciding a motion to dismiss the case." *Id.* In addition, the Senate Report states that Congress intended the Act "to be liberally construed so as to effectuate its purpose of permitting the Government to appeal from dismissals of criminal prosecutions by district courts in all cases where the Constitution permits, and from all suppressions and exclusions of evidence in criminal proceedings, except those ordered during trial . . ." S.Rep. No. 1296, 91st Cong., 2d Sess. 18 (1970).

It is apparent from these and other legislative statements that Congress intended the phrase "after a defendant is put in jeopardy and before a verdict or finding on an indictment or information" to represent the start and finish of an ongoing trial. As the Supreme Court noted "[i]f Congress had intended only pre-trial suppression orders to be appealable, it would not have added the phrase 'and before the verdict or finding on an indictment or information.' " *United States v. Ceccolini,* 435 U.S. 268, 271 n. 1, 98 S.Ct. 1054, 1057 n. 1, 55 L.Ed.2d 268 (1978). *See also United States v. Fatico,* 579 F.2d 707, 710–11 (2d Cir.1978), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980). We conclude that § 3731 places only two limitations on the government's ability to appeal suppression orders in criminal cases. First, no government appeal may lie if the defendant's rights under the double jeopardy clause would be violated should the government prevail in its appeal. Second, no government appeal may lie if the appeal would interrupt an ongoing trial. *See United States v. Beck,* 483 F.2d 203, 205–06 (3d Cir.1973), *cert. denied,* 414 U.S. 1132, 94 S.Ct. 873, 38 L.Ed.2d 757 (1974). *Accord United States v. Ceccolini,* 435 U.S. at 271 n. 1, 98 S.Ct. at 1057 n. 1; *United States v. Fatico,* 579 F.2d at 710–11. *Cf. United States v. Scott,* 437 U.S. 82, 100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978) (midtrial *dismissal* is an appealable order). *Contra United States v. Payner,* 572 F.2d 144, 145 (6th Cir.1978).

Neither restriction bars an appeal in this case. An ongoing trial will not be interrupted because the declaration of a mistrial effectively ended the present proceedings against Harshaw.[2] Nor will a suc-

---

2. An argument may be made that because the district court denied Harshaw's motion for a judgment of acquittal, no finding or verdict on Harshaw's indictment has been made. Thus,

cessful government appeal expose Harshaw to double jeopardy because the trial was terminated at Harshaw's request. *See United States v. Scott*, 437 U.S. at 93, 100–01, 98 S.Ct. at 2198–99; *Wassall v. Ryan*, 705 F.2d 970, at 971 (8th Cir.1983). We therefore hold that 18 U.S.C. § 3731 grants us jurisdiction to decide the government's appeal.

## II. *The Merits*

On four occasions undercover police detective Holifield purchased illegal drugs from "Tuffy" Thomas. Appellant Harshaw was indicted for distributing the drugs to Tuffy on two of those occasions and for conspiring with Tuffy to distribute cocaine. Most of the government's evidence against Harshaw consisted of incriminating hearsay statements made by Tuffy. These hearsay statements were preliminarily introduced under the co-conspirator exception to the hearsay rule, subject to the government proving that a conspiracy existed between Harshaw and the hearsay declarant. *See United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978).[3] At the close of all the evidence, the district court ruled that the government had failed to establish the existence of a conspiracy by a preponderance of evidence independent from the hearsay statements themselves. *See id.* Our review is limited to clear error in this finding.

Apart from Tuffy's hearsay statements, the following facts were proved. On November 10, Detective Holifield brought $1,250 in unmarked currency to Tuffy's res-

idence in order to purchase cocaine. After Tuffy counted the money, Tuffy received a telephone call. Tuffy then left his house, but he was not followed. It is unknown where he went. About an hour later, Tuffy returned to his house where Holifield was waiting. Tuffy received another call an hour after he returned. Holifield then drove Tuffy to an address specified by Tuffy. At this location, Holifield saw a red Oldsmobile 98 automobile with a female inside. A later check of the red Olds' license plate showed that it was registered to Tuffy's home address under Harshaw's name. Tuffy then went into the red Olds, stayed thirty seconds, and exited carrying a yellow napkin. Tuffy returned directly to Holifield's car and opened the yellow napkin to reveal a clear bag containing what later proved to be cocaine.

At trial Holifield identified Harshaw as the woman in the car. Other police agents also identified Harshaw as the woman they followed from the red Olds into a nearby bar.[4] Holifield also managed to get a phone number for "Squeaky" from Tuffy's personal phone book. "Squeaky" is purportedly Harshaw's nickname. The phone number was found to be listed to 4409 June Street in the name of Gloria Story. The government claims, however, that 4409 June is Harshaw's residence.

On November 24, Holifield went to Tuffy's house with more unmarked money to purchase additional cocaine. Holifield saw Tuffy dial "Squeaky's" phone number.

technically, there is still an ongoing trial. The Supreme Court has recently ruled, however, that a midtrial dismissal instigated by the defendant is an appealable order. *United States v. Scott*, 437 U.S. 82, 100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978). The grant of a mistrial due to the introduction of inadmissible evidence, for all practical purposes, has the same effect as a dismissal in ending the defendant's trial. A liberal construction of § 3731 does not require the procedural gyrations required by the Sixth Circuit's decision in *United States v. Payner*, 572 F.2d 144 (6th Cir.1978). In that case, after the Sixth Circuit dismissed the appeal for lack of jurisdiction, the government petitioned the district court to vacate its suppression order, enter a verdict of guilty, and then re-enter its suppression order. The district court com-

plied and the Sixth Circuit then heard the government's appeal from that sequence of orders. *See United States v. Payner*, 590 F.2d 206, 207 (6th Cir.1979), *rev'd*, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).

3. Tuffy was unavailable at the time of trial.

4. Appellant contends that the identification of Harshaw as the woman in the red Olds 98 is extremely tenuous. Appellant points out that it was dark at the time, that there is conflicting testimony from police personnel as to where the red Olds 98 was parked, and that the red Olds 98 was at least forty-five feet away from the nearest police observer, including Holifield, when the alleged transaction occurred.

Tuffy completed his phone conversation and then left. He was followed by the police to 4409 June. The red Olds 98 was parked outside 4409 June. Tuffy left a few moments after arriving. Five minutes after Tuffy left, Harshaw was seen leaving 4409 June, but was not followed. About an hour and a half later, Harshaw returned to 4409 June. Meanwhile, Tuffy was followed as he went directly back to his home where Holifield was waiting. A short while later, Tuffy received a call and then left for a second time. He was again followed directly to 4409 June. He remained inside for a short time and then returned directly to his residence where Holifield was still waiting. Holifield then bought the cocaine Tuffy produced.

In sum the government's independent evidence shows that Harshaw met with Tuffy during the night of November 10 immediately prior to the cocaine buy and that Harshaw was in a building visited by Tuffy twice during the course of the November 24 cocaine buy. The parties cite to several cases to support their respective arguments.[5] Many of the cited cases which found no conspiracy state that mere presence of a defendant at the scene of the crime or mere association with members of a criminal conspiracy is not sufficient to prove a conspiracy. In all but one of the cited cases that found a conspiracy there was proof beyond mere presence at a series of meetings before the drug sale. Often the additional proof is that the defendant was arrested with marked money or drugs. *Compare United States v. Lambros,* 564 F.2d 26, 30 (8th Cir.1977) (conspiracy proved), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978), *with United States v. Brown,* 584 F.2d 252, 264 (8th Cir.1978) (money found on defendant's person not marked; no conspiracy proven),

cert. denied, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979). No such additional proof exists in this case. The one case that did find a conspiracy but did not have additional proof was *United States v. Macklin,* 573 F.2d 1046 (8th Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978). *Macklin* involved four sales, three of which involved illegal drugs. The fourth purchase turned out to be a legal substance. The defendant was present at all three illegal drug sales, but was absent at the fourth sale, which failed to produce an illegal substance. The court broadly ruled that "repeated meetings between the defendant and the individual actually making sales to police officers, at times corresponding to the time of the sales, was sufficient evidence of the existence of a conspiracy." *Id.* at 1050. But the court narrowed its holding by noting under the facts before it, "no transaction could apparently be completed until the man arrived." *Id.* "Inability to complete a drug transaction absent an individual's participation may be considered as evidence that the necessary individual was a member of a conspiracy." *Id.*

The present case is inapposite. Here, Tuffy made two drug sales to Holifield without proof that Tuffy visited Harshaw or 4409 June. Also, the least number of sales a court has found to be an acceptable pattern without additional proof is four. *See id.* at 1049–51. At most, the government has shown two Harshaw-related sales, albeit Harshaw's involvement in the second sale (November 24) is uncertain. Tuffy's movements inside 4409 June were not observed and no one knows who Tuffy actually met there. *See United States v. Brown,* 584 F.2d at 264.

 The facts of this case straddle the two lines of cases cited by the parties. The

**5.** Cases holding no conspiracy was proved: *United States v. Brown,* 584 F.2d 252 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. Holder,* 560 F.2d 953 (8th Cir.1977); *United States v. Stroupe,* 538 F.2d 1063 (4th Cir.1976); *United States v. Frol,* 518 F.2d 1134 (8th Cir.1975). Cases holding conspiracy was proved: *United States v. Milham,* 590 F.2d 717 (8th Cir.1979);

*United States v. Macklin,* 573 F.2d 1046 (8th Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978); *United States v. Lambros,* 564 F.2d 26 (8th Cir.1977), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978). Not all of these cases employed the same rule of decision or standard of review that controls our decision in this case.

applicable rule of decision requires the conspiracy to be shown with proof that the defendant knowingly contributed his efforts to further the conspiracy. "There must exist some element of affirmative cooperation or at least an agreement to co-operate." *Id.* at 262. Because this is a close case, we cannot find that the district court was clearly erroneous in ruling that the government failed to prove by a preponderance of the non-hearsay evidence that Harshaw knowingly contributed to selling cocaine or took some affirmative action to cooperate with Tuffy in selling cocaine.

Accordingly, we affirm the district court's order suppressing Tuffy's co-conspirator hearsay statements and declaring a mistrial.