848 F.2d 186
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Samuel IBEKWE, Appellant.
UNITED STATES of America, Appellee,
v.
Edwin OLEBARA, Appellant.
 Nos. 87-5620(L), 87-5621.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 20, 1988.
Decided April 20, 1988.
 
 Mark L. Gitomer (Cardin & Gitomer on brief) and Stanley H. Needleman for appellants.
 Martin S. Himeles, Jr., Assistant United States Attorney (Breckinridge L. Wilcox, United States Attorney on brief) for appellee.
 Before ERVIN and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Samuel Ibekwe and Edwin Olebara appeal their convictions of conspiracy to distribute heroin in violation of 21 U.S.C. Sec. 846, and aiding and abetting Patience Ibekwe in distributing more than 100 grams of heroin, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2.[1] Ibekwe and Olebara both moved for judgments of acquittal at the close of the government's case and at the close of all the evidence.[2] The motions were denied and on June 11, 1987, both men were convicted on all counts. Each man was sentenced to a six year term of imprisonment. Finding no error below, we affirm the convictions.
 
 I.
 
 2
 On February 28, 1987, Patience Ibekwe, who had just arrived from Nigeria, contacted Chijoke Ofo, an informant working with the United States Drug Enforcement Agency. She arranged to meet Ofo at the apartment of Samuel Ibekwe and Edwin Olebara. Later that night Patience introduced Samuel and Edwin to Ofo, and told Ofo that she wanted to sell 150 grams of heroin. Ofo agreed to help her locate a buyer. Tr. 2-128-137.
 
 
 3
 Ofo contacted DEA authorities and was told to set up a meeting with Patience the following evening. On March 1, Detective Walter Staples, posing as a buyer, accompanied Ofo to a meeting with Patience. Staples and Ofo went to the apartment of Samuel and Edwin. Samuel and Patience emerged from the building and the four drove to a nearby hotel. The foursome went to the lounge of the hotel. While Staples was away from the table Patience told Ofo that she had the drugs with her, and Ofo assured Samuel of Staples' reliability. Tr. 2-143-145.
 
 
 4
 When Staples returned to the table the price of the heroin was negotiated to be $30,000.00. Patience would deliver 105 grams that evening and the balance within the week. Staples agreed to pay $5,000.00 the following day. Samuel verbally approved of the deal. Tr. 1-46-50. The group then returned to the car and Patience started to hand over the heroin to Staples. Samuel stopped her, pointing out the surveillance cameras in the parking deck. After leaving the deck Patience gave the drugs to Staples and he gave her his name and telephone number. Samuel gave Staples his number.
 
 
 5
 The following day Staples called Patience and arranged to meet her outside the apartment to pay her the $5,000.00. When he arrived at the apartment, Staples saw Edwin come out of the building. Edwin tried to enter the car, but Staples prevented him from doing so. Patience emerged from the building and joined Staples in the car. Edwin stood by and observed. Tr. 1-57-61. Patience handed over the balance of the heroin and received the $5,000.00. She also asked Staples to try to sell 50 grams of heroin for a "friend of hers." Staples agreed.
 
 
 6
 Staples and Patience had several conversations that week and Patience confirmed that the additional 50 grams of heroin belonged to one of the men in the house where she was staying. Tr. 2-168-70. On March 7, Staples met Patience at the apartment to deliver the balance of his purchase price and to receive more heroin. Samuel and Patience emerged from the building and were arrested. Detectives seized from Samuel an address book with Staples' and Ofo's names and numbers. Edwin was then arrested and a frequently used passport, papers bearing the names and numbers of Ofo and Staples, several driver's licenses, and a bank identification card with a false name were seized from his apartment.
 
 
 7
 Both men challenge the jury instruction pertaining to the conspiracy count, and Edwin Olebara contests the sufficiency of the evidence to support his convictions. We find neither argument persuasive.
 
 II.
 
 8
 The district court instructed the jury as to the conspiracy count in this manner:
 
 
 9
 In determining whether the conspiracy charged existed, and whether the Defendant on trial before you was a member of that conspiracy, the jury should consider all of the evidence, including the actions and declarations of the alleged participants made in furtherance of the conspiracy.
 
 
 10
 JA 36-37. Olebara and Ibekwe argue that the instruction is flawed because it allowed the jury to use coconspirator statements in determining whether they were actual participants in the conspiracy. The men argue that the jury should have been instructed that it could use all of the alleged actions to determine if a conspiracy existed, but it could consider only the acts of each defendant to determine if he participated in the conspiracy. While this court has not directly addressed this question, it has intimated that the district court employed the proper instruction.
 
 
 11
 In United States v. Jones, 542 F.2d 186 (4th Cir.) cert. denied, 426 U.S. 922 (1976), this court quoted with approval language from a Ninth Circuit case which allowed the jury to consider coconspirator statements. "It is for the judge, then, not the jury, to determine the admissibility of the declarations.... Thereafter it is the jury's function to determine whether the evidence, including the declarations, is credible and convincing beyond a reasonable doubt." Id. at 203 n. 33.
 
 
 12
 Judge Learned Hand, in United States v. Dennis, 183 F.2d 201, 230 (2d Cir.1950), aff'd on other grounds, 341 U.S. 494 (1951) explained the rationale behind the jury's ability to use coconspirator's statements to determine that a particular defendant is a member of a conspiracy:
 
 
 13
 It is difficult to see what value declarations could have as proof of conspiracy, if before using them the jury had to be satisfied that the declarant and the accused were engaged in the conspiracy charged; for upon that hypothesis the declarations would merely serve to confirm what the jury had already decided. In strict logic these instructions in effect altogether withdrew the declarations from the jury, and it was idle to put them in at all. The law is indeed not wholly clear as to who must decide whether such a declaration must be used; but we think that the better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends and that, if he decides it to be competent, he is to leave it to the jury to use like any other evidence, without instructing them to consider it as proof only after they have decided a preliminary issue which alone makes it competent. Indeed, it is a practical impossibility for laymen, and for that matter most judges, to keep their minds in the isolated compartments that this requires.
 
 
 14
 Every other circuit has considered this issue and agreed with Judge Hand's conclusion that coconspirator statements properly admitted may be used by the jury for any purpose. See, e.g., United States v. Petrozziello, 548 F.2d 20, 22-23 (1st Cir.1977); United States v. Patterson, 644 F.2d 890, 896-97 (1st Cir.1981); United States v. Mastropieri, 685 F.2d 776 789-90 (2d Cir.), cert. denied, 459 U.S. 945 (1982); United States v. Trowery, 542 F.2d 623, 627-28 (3rd Cir.1976), cert. denied, 429 U.S. 1104 (1977); United States v. James, 590 F.2d 575-80 (5th Cir.), cert. denied, 442 U.S. 917 (1979); United States v. Enright, 579 F.2d 980, 986-87 (6th Cir.1978); United States v. Ayotte, 741 F.2d 865, 870 (6th Cir.), cert. denied, 469 U.S. 1076 (1984); United States v. Murzyn, 631 F.2d 525, 532 (7th Cir.1980), cert. denied, 450 U.S. 923 (1981); United States v. Smith, 578 F.2d 1227, 1232 (8th Cir.1978); United States v. Macklin, 573 F.2d 1046, 1048 (8th Cir.1978), cert. denied, 439 U.S. 852 (1979); Carbo v. United States, 314 F.2d 718, 736 (9th Cir.1963); United States v. Watson, 594 F.2d 1330, 1336 n. 8 (10th Cir.), cert. denied, 444 U.S. 840 (1979); United States v. Monaco, 700 F.2d 577, 581 (10th Cir.1983); United States v. Slade, 627 F.2d 293, 306 (D.C.Cir.), cert. denied, 449 U.S. 1034 (1980).
 
 
 15
 Finally, we note that these cases are consistent with the United States Supreme Court's ruling in Bourjaily v. United States, 107 S.Ct. 2775, 2781 (1987), wherein the court held that coconspirator's statements could be probative evidence of the existence of the conspiracy and the participation of both the defendant and the declarant in the conspiracy.
 
 
 16
 Ibekwe and Olebara argue that the trial court in this case never made the requisite findings as to the admissibility of the coconspirator statements. It is apparent from the record that the trial court did make the necessary preliminary finding. During the testimony of Detective Staples, counsel for Edwin Olebara objected to a question that called for testimony concerning a coconspirator statement by Patience. The court asked for a proffer from the government; after hearing the proffer it overruled the objection. Tr. 2-48. The record then shows that defense counsel objected to testimony concerning coconspirator statements, and that the court was satisfied that the requisite showing had been made. We conclude that the jury was properly instructed.
 
 III.
 
 17
 Olebara also argues that the government's evidence against him amounted to showing only his presence at the time Patience distributed heroin, and is accordingly insufficient to support his convictions. We believe there is ample evidence to support his convictions.
 
 
 18
 Evidence is sufficient if, "in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Laughman, 618 F.2d 1067, 1075 (4th Cir.) cert. denied, 447 U.S. 925 (1980) (quoting Jackson v. Virginia, 443 U.S. 307 319 (1979)). If there is independent evidence that a conspiracy among others apart from Olebara existed, the government needs only to show Olebara had a "slight connection with the conspiracy." United States v. Seni, 662 F.2d 277, 285 n. 7 (4th Cir.1981), cert. denied, 455 U.S. 250 (1982). The connection can be shown by circumstantial evidence. See e.g. United States v. Parodi, 703 F.2d 768, 787-90 (4th Cir.1983); Seni, 662 F.2d at 284; and Laughman, 618 F.2d at 1075.
 
 
 19
 At the latest, a conspiracy formed on March 1, when Patience and Samuel delivered heroin to Staples. Olebara was more than slightly connected with that conspiracy in that he was the first to emerge from the apartment on March 2; when he was denied entry into Staples' car he spoke to Patience; and, he kept vigil outside the car. Evidence seized from his person and his apartment also connected him to the conspiracy. He had a written copy of the names and numbers of Staples and Ofo--the Ibekwe's drug distributors. He was also found with several driver's licenses and a false bank identification card--possession of which is a practice among drug traffickers to conceal their identities. His passport showed several trips to Nigeria which is also consistent with the practices of drug couriers. His trips were not likely financed by his occupation as a taxi driver. Finally, the jury could have believed Olebara was the source of the extra 50 grams of heroin that Patience asked Staples to distribute for her. We conclude that this evidence sufficiently supports Olebara's convictions for both conspiracy and aiding and abetting the distribution of heroin. The convictions are
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 21 U.S.C. Sec. 841
 (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
 * * *
 18 U.S.C. Sec. 2.
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 [2]
 The trial of Patience Ibekwe was severed from that of appellants