# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

**Solomon R. FLORES**
**Chief Culinary Specialist (E-7), U.S. Coast Guard**

**CGCMG 0377**
**Docket No.  001-62-20**

**01 June 2020**

General Court-Martial convened by Commander, Coast Guard Pacific Area.  Tried at Alameda, California, on 24 February – 3 March 2020.

| | |
|---|---|
| Military Judge: | CAPT Matthew Fay, USCG |
| Appellate Government Counsel: | LT Nicholas J. Hathaway, USCG |
| Appellate Defense Counsel: | LT Carolyn M. Bray, USCG |
| | LT Leah K. Brett, USCG |

**BEFORE**
**McCLELLAND, BRUCE & BRUBAKER**
Appellate Military Judges

BRUBAKER, Judge:

After a General Court-Martial of officer members returned a verdict against Appellee, the military judge declared a mistrial.  The Government appeals.  We consider three questions:

(1) whether Article 62, Uniform Code of Military Justice (UCMJ), confers jurisdiction over appeals of mistrial declarations;

(2) whether Appellee waived his opportunity for a mistrial by declining to request one pre-verdict; and

(3) whether the military judge abused his discretion by declaring a mistrial.

We conclude that we have jurisdiction, that Appellee did not waive his opportunity for a mistrial, and that the military judge did not abuse his discretion in declaring one.  We thus deny the Government's appeal.

**Background**

The impetus for the mistrial was that evidence that had been the subject of extensive litigation and expressly ruled inadmissible was, nonetheless, inadvertently provided to the members as they retired to deliberate on findings. Appellee was charged with abusive sexual contact of two shipmates, assault consummated by battery of one of them, and obstructing justice, in violation of Articles 120, 128, and 134, UCMJ.[1] Prior to trial, the Government provided notice under Military Rule of Evidence (M.R.E.) 404(b), Manual for Courts-Martial (MCM), United States (2019 ed.), that it intended to introduce evidence that a third, non-participating witness, Fireman (FN) A.J., alleged that Appellee sexually assaulted her as well. After the Defense moved to suppress the evidence, the Government responded that the evidence was needed to prove obstruction of justice because it was the investigation into FN A.J.'s allegation that Appellee allegedly obstructed.

Based on this, the Defense moved to sever the obstruction charge. The Government urged that a properly-tailored instruction would suffice without the need for severance, but offered, as an alternative, not to present evidence of the underlying allegation to prove the obstruction charge. It asserted that the "only fact necessary to the obstruction charge is that FN A.J. made an allegation of misconduct against the accused, which triggered an investigation." (Appellate Ex. XIX at 7.) This would be the foundation for later problems.

The military judge accepted the Government's alternative offer: he denied the motion to sever, but sharply limited the evidence the Government would be permitted to present about FN A.J.'s allegation. Specifically, he ruled that evidence that Appellee shared a bed in a hotel room with FN A.J. and made sexual advances on her were inadmissible under M.R.E. 404(b). Also, "[t]o further safeguard against impermissible carryover across the charged offenses and uncharged allegations," the Government was precluded from discussing the identity, rank, or gender of FN A.J. as well as the substance of her allegations. (Appellate Ex. XLVII at 6.) He indicated that he would provide a limiting instruction and "be on guard against ensuring the

---

[1] Because the offenses allegedly occurred prior to the effective date of the current version of the UCMJ, they were charged under the previous version.

government does not impermissibly attempt to gain findings of guilt based on the spillover of unrelated charges and specifications." (*Id*. at 5.)

During its case-in-chief, the Government offered Prosecution Exhibit (PE) 8 for identification as evidence of a prior consistent statement by a witness to the alleged obstruction of justice. The Defense raised several objections, including that it violated the military judge's order: the Government had redacted FN A.J.'s name, but left unredacted the witness's statement that Appellee "had made it clear that he wanted me to specifically tell the investigators that 1) He did not touch her and 2) That he did not hurt her." (Prosecution Ex. 8 at 1.)

Sustaining the objection, the military judge directed this language be redacted. The Government complied and offered a redacted PE 9 for identification. The military judge then sustained an additional objection, at which point the Government offered a further-redacted PE 10 for identification, which was, finally, admitted. However, for unknown reasons, the words "for identification" were stricken from all three exhibits.

As the members prepared to deliberate on the findings, the military judge provided them what he believed to be previously-admitted exhibits. The members began deliberation, then recessed for the evening. The following morning, the military judge discovered that PEs 8, 9, and 10 had all gone into the deliberation room with the members. With the members absent, the military judge asked counsel if either was moving for a mistrial. The trial counsel answered he was not. The trial defense counsel responded, "Sir, before I answer that, can I—can I propose something?" The military judge said, "Yes. Well, here's—here's how I'd like to proceed. I'd like to proceed with a strong curative instruction to the members, then send the members to continue to deliberate." (R. at 1391.) Then, without prompting, the military judge offered that he would consider "waiting until the members return from findings," explaining that, by his reading of *United States v. Short*, 77 M.J. 148 (C.A.A.F. 2018), one of the ways to determine the effectiveness of a curative instruction is to assess the members' findings. (R. at 1392.)

The military judge called the members back and ascertained that they had indeed reviewed PEs 8 and 9. He then asked if they would be able to set aside the inadmissible

evidence and make their decision based only on admissible evidence. They all indicated they could. After excusing the members, he again asked the trial defense counsel whether she was moving for a mistrial. The trial defense counsel, not answering directly, stated that she first was requesting "a more robust curative instruction." (R. at 1396.) A proposed instruction was drafted and being discussed when the trial defense counsel indicated that she was not sure that any instruction could cure the error. The military judge responded:

> I feel that to declare a mistrial at this point would put your client at the disadvantage for an issue that wasn't his fault. And I fully intend to, should the members return with any guilty verdict, to *sua sponte*, if not raised by defense counsel, to raise the issue of whether to declare a mistrial after findings. *I do not consider this to be a closed issue*. . . . The only reason I'm not declaring mistrial now is because the defense has not requested it."

(R. at 1403 (emphasis added).)

Trial defense counsel then expressed that two of the members "were very hesitant" when the military judge asked whether they could not consider the inadmissible evidence and that one had a "pained expression" during the military judge's questions. She nonetheless believed that further *voir dire* of the members would potentially delve into the deliberative process already underway. The military judge agreed. (R. at 1403–04.)

After further discussions about the proposed instruction, the trial defense counsel said, "And, sir, just so that we are clear. Although we are not yet asking for one, we believe in accordance with *United States v. Short*, having read that case, that it is still available." (R. at 1405.) The military judge agreed: "I think it's premature. . . . I am not making a *sua sponte* decision, particularly over . . . the objection of defense counsel, but am putting counsel on notice that should there be any guilty verdict returned in this case, I intend to call at least a recess to allow the parties to argue it in a more informed manner." (R. at 1405.)

The military judge provided the curative instruction and allowed the members to continue deliberation. The members returned with their findings: not guilty to one of the two abusive sexual contact specifications; guilty to the remaining charges and specifications. Then, as promised, the military judge indicated he would hear argument on whether he should declare a

mistrial. After trial defense counsel argued on behalf of a mistrial and trial counsel against, the military judge declared a mistrial. The Government timely gave notice and filed this appeal.

## Jurisdiction

"[E]very federal appellate court has a special obligation to satisfy itself of its own jurisdiction." *Loving v. United States*, 62 M.J. 235, 239 (C.A.A.F. 2005) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (internal quotation marks and ellipses omitted). Jurisdiction is a legal question that we review *de novo*. *Randolph v. HV*, 76 M.J. 27, 29 (C.A.A.F. 2017). As the party invoking our jurisdiction, the Government has the burden to establish it. *Id.* at 29.

The Government invokes Article 62(a)(1)(A), UCMJ, which allows it to appeal "[a] military judge's order or ruling which terminates the proceedings with respect to a charge or specification." Appellee challenges this basis for jurisdiction, asserting that a mistrial does not "terminate[] the proceedings" within the meaning of Article 62. Neither party offers—nor are we aware of—any binding precedent directly holding that a mistrial "terminates the proceedings," and thus comes within the ambit of Article 62.

The Government points out that in *United States v. Sullivan*, Dkt. No. 001-62-17, (C.G. Ct. Crim. App. Nov. 29, 2016) (unpub.), a panel of this Court considered—and denied—a Government appeal of a mistrial. The current jurisdictional question, however, was neither raised nor discussed in *Sullivan* and, as an unpublished opinion, it lacks precedential effect. Still, the Government is correct that *Sullivan* reflects at least that panel's satisfaction that Article 62 confers jurisdiction over an appeal of a mistrial declaration. *See Loving* 62 M.J. at 239. With the benefit of the issue now being raised and briefed, we take the opportunity to explicitly hold that an order declaring a mistrial "terminates the proceedings" within the meaning of Article 62; we therefore have jurisdiction over a Government appeal of such an order.

We turn first to the text of the statute. *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017). The article itself does not further define when an action "terminates the proceedings," and Appellee is correct that a mistrial does not extinguish *all* proceedings for *all*

time: a mistrial has the effect of withdrawing the affected charges and specifications from the court-martial, and a convening authority may later re-refer them. Rule for Courts-Martial (R.C.M.) 915(c)(1), MCM (2019 ed.); R.C.M. 915(c)(1), Discussion. But in this sense, a mistrial is no different from a dismissal: a dismissed specification too can ordinarily be re-referred as long as the grounds for dismissal no longer exist. R.C.M. 907(a), Discussion. Yet, without qualifying whether with or without prejudice, R.C.M. 907 describes a motion to dismiss as "a request to *terminate further proceedings* as to one or more charges and specifications. . . ." R.C.M. 907(a) (emphasis added).

That is because a dismissal—like a mistrial—terminates the proceedings, in a plain and ordinary sense of the phrase, irrespective of the *possibility* of starting new proceedings through re-referral. In this, we agree with our sister court: "[T]he phrase 'terminates the proceedings' in Article 62 means to terminate the proceedings *before the particular court-martial* to which a charge has been referred. Given this reading of Article 62, it is clear that a mistrial declaration terminates the proceedings, and, therefore, that this court has jurisdiction over a Government appeal from such an order." *United States v. Dossey*, 66 M.J. 619, 624 (N-M. Ct. Crim. App. 2008) (*en banc*). *See also United States v. Weymouth*, 40 M.J. 798, 800 (A.F.C.M.R. 1994), *aff'd*, 43 M.J. 329 (C.A.A.F. 1995) ("Regardless of whether the dismissal was with or without prejudice, the military judge 'terminate[d] the proceedings with respect to a charge or specification' when he dismissed the assault offenses . . . .").

This conclusion is only bolstered by Article 62's recently-added admonition that its provisions "shall be liberally construed to effect its purposes." Article 62(e), UCMJ. The purpose of Article 62 is "to provide the Government with a right of appeal similar to that applicable in federal civilian courts under the Criminal Appeals Act, 18 U.S.C. § 3731." *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995). The Criminal Appeals Act, in turn, was "intended to remove all statutory barriers to Government appeals and permit whatever appeals the Constitution would permit." *United States v. Wilson,* 420 U.S. 332, 337 (1975). A narrow interpretation that an order must *permanently* terminate a proceeding runs counter to this purpose.

We note, finally, that at least two Federal Circuits have liberally construed the Criminal Appeals Act—with its provision allowing appeal of orders "dismissing an indictment or information as to any one or more counts," 18 U.S.C. § 3731—as encompassing mistrial declarations. In *United States v. Harshaw*, 705 F.2d 317 (8th Cir. 1983), the Court asserted, "Due consideration must be given to the evil that the statute was meant to address as well as the purpose Congress intended the language of the statute to serve," and that legislative history for the Act's 1971 amendments "reveals that Congress wanted to eliminate the Act's 'confusing common law language [that] arbitrarily restricts the Government's right to appeal in a number of common situations." *Id*. at 319 (quoting 116 Cong.Rec. 35,659 (1970) (statement of Sen. Hruska)). It thus concluded that the "grant of a mistrial due to the introduction of inadmissible evidence, for all practical purposes, has the same effect as a dismissal *in ending the defendant's trial*." *Id.* at 319, n.2 (emphasis added). *See also United States v. Chapman*, 524 F.3d 1073, 1080 (9th Cir. 2008). Though these decisions are not binding on us—and we remain mindful of the differences between the Criminal Appeals Act and Article 62—we find them instructive. *See Jacobsen*, 77 M.J. at 86.

In sum, particularly given the liberal-construction mandate, we are satisfied that a mistrial terminates the proceedings within the meaning of Article 62 and that we have jurisdiction.

**Waiver**

The Government asserts that by affirmatively declining to request a mistrial pre-verdict, Appellee waived his opportunity for a mistrial. Under the circumstances of this case, we disagree.

We review waiver *de novo*. *United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019). "Waiver can occur either by operation of law or by the intentional relinquishment or abandonment of a known right." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (internal quotation marks and citations omitted). A valid waiver ordinarily operates to extinguish a party's right to complain about the waived matter on appeal. *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017).

Waiver does not apply here for two reasons. First, the record does not support that Appellee, at any point, intentionally relinquished his right to request a mistrial. The Government, on appeal, does present a cogent argument that an accused who learns of an error before a verdict has been rendered *should*, at that time, be required to inform the court whether he is requesting a mistrial or merely a curative instruction, and that once he has elected a curative instruction, he does not have the right to re-visit his decision upon learning the verdict. *See, e.g., United States v. Ortiz-Arrigoitia*, 996 F.2d 436, 442 (1st Cir. 1993) ("It is our view that a motion for a mistrial should be made promptly. This was no case of mistake or inadvertence, but one of deliberate delay for tactical purposes. Failure to make a timely motion for mistrial under these circumstances constitutes a waiver and precludes consideration of this issue on appeal . . . ."); *United States v. Michaud*, 860 F.2d 495 (1st Cir. 1988) ("Ordinarily, we do not allow a defendant who turns down an offer of a mistrial before the jury returns its verdict to have a second opportunity to seek a mistrial after he learns the jury decided against him.").

But that is not what happened here. The military judge not only opted *not* to require Appellee to choose his remedy prior to a verdict being rendered, but affirmatively assured him that providing a curative instruction and allowing the members to complete their deliberations would not preclude him from considering a mistrial post-verdict. Whether the military judge properly *could* or even *should* have required Appellee to choose his requested relief prior to the verdict is another matter.[2] None of that changes the waiver analysis here. The military judge very plainly gave Appellee the choice to seek a curative instruction without prejudicing his ability to request a mistrial after he knew the verdict.

Second, it is the Government complaining on appeal of the result below, not Appellee. If the military judge had denied a mistrial, that, of course, would be a different matter. But here, even were we to find that Appellee had knowingly relinquished his right to request a mistrial, the military judge of his own initiative brought it up again—as he said he would—sought input from

---

[2] Unlike the military judge, we do not read *Short* as encouraging trial judges to await a verdict to assess the effectiveness of prospective curative instructions. The Court in *Short* was merely using the tools available to any appellate court—including reviewing a complete, already-existing record—to assess whether the trial judge erred by denying multiple defense motions or if, instead, his curative instructions were effective to remediate prejudice from prosecutorial misconduct. *See Short*, 77 M.J. at 151–52.

the parties, then granted Appellee's motion for a mistrial. The Government offers us no basis to hold that the military judge was barred from doing so, nor are we aware of any.

Under these circumstances, Appellee did not waive his opportunity for a mistrial.

### Whether the Military Judge Abused His Discretion

We turn, finally, to the merits of whether the military judge abused his discretion by declaring a mistrial. Under Article 62, we act only with respect to matters of law. We review the evidence in the light most favorable to the prevailing party and are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous. *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017). We review conclusions of law *de novo*. *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014).

A military judge "may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." R.C.M. 915(a); *Short*, 77 M.J. at 150. When considering whether to declare a mistrial, the military judge "should examine the timing of the incident, the identity of the factfinder, the reasons for a mistrial, and potential alternative remedies. Most importantly, the military judge should consider the desires of and the impact on the defendant." *United States v. Thompkins*, 58 M.J. 43, 47 (C.A.A.F. 2003) (internal quotation marks and citations omitted).

A mistrial is "an unusual and disfavored remedy" that "should be applied only as a last resort to protect the guarantee for a fair trial." *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003). A military judge should first "explore the option of taking other remedial action, such as giving curative instructions." *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009). *See also United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990) ("Giving a curative instruction, rather than declaring a mistrial, is the preferred remedy for curing error when court members have heard inadmissible evidence, as long as the curative instruction avoids prejudice to the accused."). Though members are ordinarily presumed to comply with instructions, *Thompkins*, 58 M.J. at 47, a mistrial may be necessary "when inadmissible matters so prejudicial that a

curative instruction would be inadequate are brought to the attention of the members." R.C.M. 915(a), Discussion.

A military judge has a superior vantage point over appellate courts in making this determination and thus gets "considerable latitude in determining when to grant a mistrial." *Diaz*, 59 M.J. at 90. We will not reverse a military judge's determination unless there is "clear evidence of abuse of discretion." *Id.*

There is no such clear evidence here. The salient facts are straightforward and undisputed: during deliberation, the members were erroneously provided evidence that the military judge had explicitly ruled inadmissible. The military judge questioned the members and determined that they had, in fact, reviewed the inadmissible evidence. What remained was the difficult task of assessing the probable impact that the inadmissible evidence had on the members and whether the instruction to disregard it was sufficient. *See id.* at 91.

The military judge was in the best position to make this assessment; we cannot fault his judgment that curative instructions were inadequate and that a mistrial—drastic and disfavored as it is—was, under the circumstances, manifestly necessary. The military judge had worked throughout the trial to "thread the needle" between, on the one hand, allowing the Government to prosecute all known charges together and, on the other, preventing admission of evidence whose probative value was substantially outweighed by the danger of unfair prejudice to Appellee. (R. at 1168.) Although inadvertent, the lid was blown off of these efforts when the members received exhibits with inadmissible and highly prejudicial evidence, and the discovery came at perhaps the worst possible time: after all evidence had been presented, arguments had been made, and members had already started processing the evidence. We conclude that the military judge did not abuse his discretion in declaring a mistrial.

**Decision**

The Government's appeal is denied.  The military judge's order declaring a mistrial is affirmed.

Chief Judge McCLELLAND and Judge BRUCE concur.



For the Court,

Sarah P. Valdes
Clerk of the Court