# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Armando RODRIGUEZ
### Intelligence Specialist (E-7), U.S. Coast Guard

### 25-012(62)
### Docket No. 1511

### 18 August 2025

General Court-Martial convened by Commander, Coast Guard Atlantic Area. Article 39(a), UCMJ, sessions at Norfolk, Virginia, on 25 January 2025, 5 March 2025, and 15 April 2025.

| | |
|---|---|
| Military Judge: | CAPT Stephen J. Adler, USCG |
| | CDR Jeffery C. Barnum, USCG |
| Appellate Government Counsel: | LCDR Lorhel E. Stokes, USCG |
| Appellate Defense Counsel: | Mr. Scott R. Hockenberry, Esq. |
| | CDR Jason W. Roberts, USCG |

## BEFORE
## McCLELLAND, BRUBAKER & MILLER
Appellate Military Judges

BRUBAKER, Judge:

In a pending general court-martial, Appellee is charged with sexually assaulting a child and providing alcohol to a person under the age of 21. The Government moved in limine for a ruling on the admissibility of statements made by the putative victim under the excited utterance exception of the hearsay rule, Military Rule of Evidence (Mil. R. Evid.) 803(2). The military judge ruled that the statements are inadmissible. The Government appeals under Article 62, Uniform Code of Military Justice (UCMJ).

The Government asserts:

I. The military judge abused his discretion when he found J.S.'s initial outcry statements to her mother describing the sexual assault were not admissible as excited utterances under Mil. R. Evid. 803(2); and

II.  The military judge abused his discretion in holding that J.S.'s statement to her mother that she was "raped" is inadmissible because it fails the Mil. R. Evid. 403 balancing test.

Construing the provisions of Article 62 liberally, we conclude we have jurisdiction over the Government's appeal. But viewing the military judge's ruling through a deferential lens, we conclude he did not abuse his discretion.

## Background

Out on a "daddy-daughter day," Appellee allegedly took J.S., his then-12-year-old stepdaughter, to a hotel room, provided her alcohol until she fell asleep or passed out, then performed oral sex on her. App. Ex. 62 at 2. J.S. alleges she woke up while this was occurring, but, scared and unsure what to do, pretended to be asleep. Later, the two left the hotel, stopped at a fast-food restaurant, then went home. There, J.S. briefly interacted with her mother, S.R., then went to her room. At some point that evening, J.S. and S.R. spoke privately in her room.

The accounts about the conversation in J.S.'s room by J.S. and S.R., both of whom testified at an evidentiary hearing, differ. According to J.S., "When I got to my room, sometime after, quite soon, she came in, asked me what was wrong, because I'd gone there very quickly. And I proceeded to tell her about the assault." Rodriguez CLOSED transcript 15APR25 at 76. She said that when she walked into the house, she felt "[s]cared, disappointed in myself . . . [f]or drinking the alcohol, getting in that situation." *Id*. at 77–78. When asked if she was "emotional in any way" once the conversation with her mother began, J.S. responded, "Not yet. I do not think I was crying or anything." *Id.* at 78. That changed as S.R. began to confront J.S., examined her vagina, saying she saw nothing to indicate anything happened, and called Appellee into the room.

S.R., on the other hand, testified that when J.S. came home, she appeared happy and normal. S.R. showed her a comb with an unfolding sharp object she had gotten during the outing. S.R. did not allow her to keep this, which upset J.S. somewhat. J.S. and her brother then presented S.R. with a candle they had purchased for her. J.S. then went up to her room. Later, while watching a movie, J.S. asked S.R. if they could talk privately. Once in J.S.'s room, J.S.

said she wanted S.R. to divorce Appellee. When J.S. would not provide a reason, S.R. said she had taken a vow, and that unless Appellee did something terrible, that was not going to happen. At that point, while talking quietly and looking at S.R. intently, but not crying or shaking, J.S. stated that Appellee had "assaulted her in a sexual manner." *Id.* at 18. Later, however, as S.R. started confronting J.S. about why she didn't take actions "I would have thought that I would have done in that situation," *id.* at 22, J.S. became teary-eyed, "getting louder, like more emotional," and at one point used the word "rape." *Id.* at 40.

The military judge ruled that "J.S.'s statements made before her mother confronted her about her inaction in the face of the alleged sexual assault do not qualify as an excited utterance and are not admissible per M.R.E. 803(2)." App. Ex. 62 at 12. He ruled that J.S.'s statement about being "raped" qualifies as an excited utterance, but that its probative value is substantially outweighed by the dangers of prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence and is thus inadmissible under M.R.E. 403.

## Jurisdiction

The parties dispute whether we have jurisdiction over this appeal. This Court always must satisfy itself of its own jurisdiction, and we review the question de novo. *United States v. Jacobsen*, 77 M.J. 81, 84, 85 (C.A.A.F. 2017). Military appellate courts, "being creatures of Congress created under the Article I power to regulate the armed forces, must exercise their jurisdiction in strict compliance with authorizing statutes." *Ctr. for Const. Rts. v. United States*, 72 M.J. 126, 128 (C.A.A.F. 2013). The party seeking to invoke our jurisdiction has the burden of establishing it. *Id*.

The Government asserts we have jurisdiction under Article 62(a)(1)(B), UCMJ, which provides that the United States may appeal "[a]n order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding." Article 62(a)(1)(B), UCMJ. Under this provision, the Government has the burden of establishing two "threshold jurisdictional requirement[s]": (1) that the military judge's ruling excludes evidence; and (2) that the excluded

evidence is "substantial proof of a fact material in the proceeding." *Jacobsen*, 77 M.J. at 86 (quoting Article 62(a)(1)(B), UCMJ).

In interpreting whether the requirements of Article 62 are met, we must consider its mandate that its provisions "shall be liberally construed to effect its purposes." Article 62(e), UCMJ. Article 62's purpose is "to provide the Government with a right of appeal similar to that applicable in federal civilian courts under the Criminal Appeals Act, 18 U.S.C. § 3731." *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995). The Criminal Appeals Act, in turn, "was 'intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit.' " *United States v. Badders*, 82 M.J. 299, 304 (C.A.A.F. 2022) (quoting *United States v. Wilson,* 420 U.S. 332, 337 (1975)); *see also, United States v. Flores*, 80 M.J. 501, 505 (C.G. Ct. Crim. App. 2020).

Although the parties did an excellent job presenting both sides of this question, we are satisfied that, applying the liberal construction mandate, we have jurisdiction.

1. The Ruling Excludes Evidence

Appellee asserts that the ruling does not exclude evidence. He points out that it is a "Ruling on Government Motion for *Preliminary Ruling* on Admissibility of Evidence (J.S.'s statements to S.R.)," and that the military judge expressly stated that his denial of the Government's motion "is without prejudice, and if (1) offered on another basis, or (2) evidence adduced at trial alters the relative probative value of either statement, the Government could move for their admission." App. Ex. 62 at 1, 12 (emphasis added). Appellee therefore likens this case to *United States v. Bradford*, where the United States Court of Appeals for the Armed Forces held that a military judge's ruling denying a Government motion to preadmit evidence did not "exclude evidence" and was therefore not appealable under Article 62, UCMJ. 68 M.J. 371, 373 (C.A.A.F. 2010).

*Bradford* is, however, distinguishable. First, unlike in *Bradford*, the military judge in this case conducted a thorough evidentiary hearing before ruling that the proffered evidence was *inadmissible* as opposed to merely declining to preadmit evidence due to a failure to lay a proper

foundation. *Id.* at 373. The fact that the ruling *could* be revisited or the evidence *could* be admitted on different grounds does not change this. *See United States v. Decinces*, 808 F.3d 785, 790 (9th Cir. 2015) (holding that the district court's action on motions in limine was appealable even though "the district court described its ruling as tentative and made clear that the order was 'without prejudice to asking the Court . . . to consider permitting the introduction of the evidence' at trial.").

Second, as the Government aptly points out, *Bradford* preceded the amendment to Article 62 adding the liberal construction mandate. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5326, 130 Stat. 2000, 2929 (2016). Applying this mandate, the phrase "excludes evidence" "is indeed read broadly, to encompass any order which has the effect of denying admissibility to any evidence on any ground at the request of either party." *United States v. Barletta*, 644 F.2d 50, 56 (1st Cir. 1981) (applying 18 U.S.C. § 3731). And it is the practical effect of a ruling that controls, not its nomenclature. *United States v. DeCologero*, 364 F.3d 12, 22 (1st Cir. 2004) ("[P]retrial orders that have the practical effect of excluding material evidence at trial are appealable under section 3731, regardless of nomenclature.") (internal quotation marks and citation omitted).

We thus conclude that the "excludes evidence" prong is met.

2. The Excluded Evidence is Substantial Proof of a Material Fact

Noting that the Government intends to call J.S. at trial to provide direct testimony of her recollection of the alleged assault, Appellee disputes that evidence of out-of-court statements she made to her mother are "substantial proof of a material fact." He makes valid points about the relative weight of the evidence, but we again emphasize that in determining whether a ruling is appealable under Article 62, we must liberally construe its provisions to effect its purpose of "remov[ing] all statutory barriers to Government appeals and [allowing] appeals whenever the Constitution would permit." *Badders*, 82 M.J. at 304.

Applying this mandate, we conclude that the proffered testimony constitutes "substantial proof of a material fact." First, it clearly is proof of a material fact. As an exception to the

general rule against hearsay, an excited utterance may be considered for the truth of the matter asserted. Mil. R. Evid. 803(2). Here, the matter asserted is that Appellee sexually assaulted J.S.—obviously a material fact in the proceeding.

The harder question, of course, is whether the out-of-court statement is *substantial* proof of this material fact. We need not here attempt to draw precise contours of when proof is "substantial" enough to meet this jurisdictional requirement other than to note that, reading the term broadly, it is a relatively low bar. An alleged outcry statement by a putative child victim close in time to the alleged assault in our mind is certainly "substantial" enough to get over this bar. *See United States v. Henry*, 81 M.J. 91, 96 (C.A.A.F. 2021) ("M.R.E. 803(2) does not require corroboration—the declarant's statement is sufficient to prove the existence of the startling event."). The fact that the evidence may be cumulative to other evidence available to the prosecution is not relevant to determining whether we have jurisdiction. *United States v. Wuterich*, 67 M.J. 63, 76 (C.A.A.F. 2008) ("[T]he question of whether the [proffered evidence] is cumulative goes to the merits of the ruling by the military judge, not whether that ruling is appealable.").

In short, we conclude that the Government has carried its burden to show that both of Article 62's threshold jurisdictional requirements are met. We are satisfied that we have jurisdiction over this appeal of the military judge's ruling.

## Whether the Military Judge Abused His Discretion

*Law*

In an appeal under Article 62, UCMJ, we "may act only with respect to matters of law." Article 62(b), UCMJ. We review the evidence in the light most favorable to the party that prevailed at trial and "are bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017).

"We review a military judge's ruling admitting or excluding an excited utterance for an abuse of discretion." *Henry*, 81 M.J. at 95 (cleaned up). A military judge abuses his discretion if

he: "(1) predicates his ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) fails to consider important facts." *United States v. Becker*, 81 M.J. 483, 489 (C.A.A.F. 2021) (cleaned up). "The abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Smith*, 83 M.J. 350, 355 (C.A.A.F. 2023) (cleaned up).

" 'A statement relating to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition,' is admissible as an exception to the general prohibition on hearsay." *United States v. Bowen*, 76 M.J. 83, 87–88 (C.A.A.F. 2017) (footnote omitted) (quoting Mil. R. Evid. 803(2)). "[T]o qualify as an excited utterance: (1) the statement must be 'spontaneous, excited or impulsive rather than the product of reflection and deliberation'; (2) the event prompting the utterance must be 'startling'; and (3) the declarant must be 'under the stress of excitement caused by the event.' " *Henry*, 81 M.J. at 96 (quoting *United States v. Arnold*, 25 M.J. 129, 132 (C.M.A. 1987)).

"The proponent of the excited utterance has the burden to show by a preponderance of the evidence that each element is met." *Henry,* 81 M.J. at 96 (citation omitted). "The guarantee of trustworthiness of an excited utterance is that the statement was made while the declarant was still in a state of nervous excitement caused by a startling event." *United States v. Chandler*, 39 M.J. 119, 123 (C.M.A. 1994) (citation omitted). "As a general proposition, where a statement relating to a startling event does not immediately follow that event, there is a strong presumption against admissibility under M.R.E. 803(2)." *United States v. Donaldson*, 58 M.J. 477, 484 (C.A.A.F. 2003) (citation omitted). "However, courts have been more flexible in cases in which the declarant is young, particularly where the statement was made during the child's first opportunity alone with a trusted adult." *Id*.

> In determining whether a declarant was under the stress of a startling event at the time of his or her statement, courts have looked to a number of factors. These may include: "the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event,

and the subject matter of the statement."

*Id.* at 483 (quoting *Reed v. Thalacker,* 198 F.3d 1058, 1061 (8th Cir. 1999)).

*Application*

The military judge ruled, first, that J.S.'s initial statements to her mother do not qualify as an excited utterance under Mil. R. Evid. 803(2) and second, that her using the word "rape" following a confrontation with her mother qualifies as an excited utterance, but it fails the Mil. R. Evid. 403 balancing test. Although the Government raises some valid points that *could* convince a military judge to rule to the contrary, under the deferential abuse of discretion standard and viewing the evidence in the light most favorable to Appellee, *Pugh*, 77 M.J. at 3, we conclude that the military judge did not abuse his discretion. We address each part of the ruling in turn.

1. J.S.'s initial statements

After weighing the *Donaldson* factors, the military judge acknowledged that the lapse of a few hours that had passed from the startling event (here, the alleged sexual assault) and J.S.'s initial statements was reasonable given J.S.'s age and her mother being the first trusted adult to whom she could make the disclosure. But, emphasizing J.S.'s apparent calm demeanor and conversational tone at that point, he concluded the Government had not established that she was "under the stress of excitement" of the sexual assault while making her initial disclosures or that they were "spontaneous, excited, or impulsive." *Henry*, 81 M.J. at 96.

We conclude that none of the military judge's findings of fact are clearly erroneous. The Government does, however, correctly point out that while the military judge made findings of fact addressing S.R.'s testimony, he failed to do the same for J.S.'s testimony. As noted above, a military judge abuses his discretion if he fails to consider important facts, *Becker*, 81 M.J. at 489, and we do not question that a declarant's testimony about the circumstances surrounding her own statement is important. But while it would have been preferable for the military judge to expressly address J.S.'s testimony and perhaps even make findings to reconcile differences, we cannot say that the military judge *failed to consider* her testimony.

Based on the Government's own question about whether J.S. was "emotional in any way" when she started to tell her mother what happened, J.S. responded, "*Not yet. I do not think I was crying or anything.*" Rodriguez CLOSED transcript 15APR25 at 78 (emphasis added). We acknowledge the Government's point that J.S. had, prior to this exchange, stated that when her mother came in the room, she was "[s]cared, just kind of also hoping that she would do something." *Id.* But given her later denial that she was emotional in any way as she related what happened to her, and viewing the evidence in the light most favorable to Appellee as the prevailing party, we cannot say that it was an abuse of discretion to conclude that she was not, at that time, "in a state of nervous excitement caused by a startling event." *Chandler*, 39 M.J. at 123.

Even if we could interpret the evidence differently and come to a different conclusion, we are not free to do so. The military judge operated within his range of choices and did not abuse his discretion in concluding that the Government failed to establish the elements of an excited utterance. *See Donaldson*, 58 M.J. at 482; *Smith*, 83 M.J. at 355.

2. J.S.'s post-confrontation statement

The military judge found that when S.R. confronted J.S. and examined her vagina, J.S. became more emotional and at some point used the word "rape" to describe what had happened to her. He concluded that this statement qualified as an excited utterance, but that the probative value of the statement was substantially outweighed by the danger of unfair prejudice. In reaching this conclusion, he applied the *Wright* factors: (1) the strength of the proof of the prior act; (2) the probative weight of the evidence; (3) the potential to present less prejudicial evidence; (4) the possible distraction of the fact-finder; (5) the time needed to prove the prior conduct; (6) the temporal proximity of the prior event; (7) the frequency of the acts; (8) the presence of any intervening circumstances; and (9) the relationship between the parties. *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005) (citing *United States v. Wright*, 53 M.J. 476, 482 (C.A.A.F. 2000)).

The *Wright* factors have been applied to determine when evidence *of uncharged misconduct*, such as of similar crimes under Mil. R. Evid. 413 or 414, is barred by the balancing

test of Mil. R. Evid. 403. *See, e.g., United States v. Solomon*, 72 M.J. 176, 180 (C.A.A.F. 2013); *Berry*, 61 M.J. at 95; *United States v. Bare*, 65 M.J. 35, 37 (C.A.A.F. 2007); *United States v. Barnett*, 63 M.J. 388, 395–396 (C.A.A.F. 2006). As the Government notes, some of the *Wright* factors—such as the relationship between the parties—make little sense when conducting a Mil. R. Evid. 403 balancing test on evidence of an excited utterance.

Still, to the extent that the military judge erred in applying inapposite *Wright* factors to an excited utterance, his overall conclusion withstands scrutiny. First, the evidence—essentially that as J.S. became upset, she used the word "rape" at some point—has very little probative value. It was S.R., not J.S., who testified to this, and, as the military judge noted, her testimony on this was indeterminate and vague. Its probative value is further undermined by the fact that J.S. is available and expected to testify directly about what Appellee allegedly did to her. If an excited utterance were the only evidence available to the prosecution, that would certainly enhance its importance, but that is not the case here. Second, where the only evidence at this point is the use of the term "rape," and Appellee is not charged with rape, the military judge did not abuse his discretion in assessing the dangers of unfair prejudice and confusing the members as high.

In sum, although some of the *Wright* factors the military judge weighed were inapt, he did not abuse his discretion in concluding that the statement fails the Mil. R. Evid. 403 balancing test.

**Decision**

The Government's appeal is denied. The military judge's ruling that the putative victim's statements to her mother are not admissible is affirmed.[1]

Chief Judge McCLELLAND and Judge MILLER concur.



For the Court,

Sarah P. Valdes
Clerk of the Court

---

[1] This opinion addresses only the military judge's ruling as developed in the record at this stage of the proceedings under the strictures of Article 62, UCMJ. Nothing in this opinion should be construed as constraining the military judge from re-addressing admissibility of J.S.'s statements on these or other grounds as the proceedings progress.